FILED
07/23/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2024 Session

## STATE OF TENNESSEE v. TREVOR RACHELL CULLOM

**Appeal from the Criminal Court for Knox County**
**Nos. 117642, 122303        G. Scott Green, Judge**

————————————————————

**No. E2023-00965-CCA-R3-CD**

————————————————————

The Defendant, Trevor Rachell Cullom, appeals from the Knox County Criminal Court's probation revocation of the ten-year sentence he received for his guilty-pleaded conviction of attempted unlawful possession of a weapon. On appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and D. KELLY THOMAS, JR., SP.J., joined.

Dillon Zinser, Knoxville, Tennessee, for the appellant, Trevor Rachell Cullom.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Charme P. Allen, District Attorney General; and Karla Mendez and Robert Debusk, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

On July 1, 2020, the Defendant was indicted in case number 117642 for unlawful possession of a weapon, possession of cocaine, and possession of marijuana. On March 18, 2021, the Defendant pleaded guilty to attempted unlawful possession of a weapon, at which time he received a ten-year sentence to be served on probation after one year in confinement. The guilty plea hearing is not included in the record.

A November 17, 2021 probation violation warrant alleged that on November 15, 2021, the Defendant was arrested for possession of marijuana, driving while his license was revoked, and violating the financial responsibility law. The probation violation warrant alleged, as well, that the Defendant possessed what was believed to be heroin at

the time of the arrest. The Defendant remained in confinement for the probation violation until May 18, 2022, at which time the trial court released the Defendant on his own recognizance and returned him to probation supervision. The Defendant was ordered by the court to live at his mother's home and to leave the home only "for work or with his mother." On August 11, 2022, the probation violation warrant was amended to include the allegation that the Defendant tested positive for marijuana on August 3, 2022.

On August 18, 2022, the Defendant was indicted in case number 122303 in connection with the November 15, 2021 offenses. The Defendant was charged with possession with the intent to sell or to deliver 0.5 gram or more of methamphetamine, possession with the intent to sell or to deliver Gabapentin, possession of marijuana, driving while his license was revoked, and violating the financial responsibility law.

On August 24, 2022, the probation violation warrant was amended to include the allegations that the Defendant moved without obtaining permission from his probation officer, that he failed to notify his probation officer of his new address, that he "willfully absconded [from] supervision," that he failed to appear in court on August 11, 2022 in connection with case number 122303, and that he failed to report to his probation officer on August 15, 2022. On November 18, 2022, the probation violation warrant was amended to include allegations that the Defendant was arrested on November 11, 2022 for possession of marijuana and methamphetamine.

A trial court minute entry reflects that on February 13, 2023, the court "heard part of the proof" in connection with the probation violation. However, the transcript of this hearing is not contained in the record. *See* T.R.A.P. 24(b); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal.). The probation violation allegations were not addressed by the trial court again until June 23, 2023.

On March 30, 2023, the Defendant pleaded guilty in case number 122303 to possession with the intent to sell or to deliver methamphetamine and received an eight-year sentence. The Defendant likewise pleaded guilty to possession with the intent to sell or deliver Gabapentin and received a two-year sentence. The trial court reserved its manner of service determination until the completion of a presentence report.

On June 23, 2023, the trial court held a consolidated hearing for sentencing in case number 122303 and probation revocation in case number 117642. At the hearing, the Defendant's driving record was received as an exhibit and showed numerous violations and a suspended license.

An August 17, 2022 violation of probation report was received as an exhibit. The report reflects, in relevant part, the history of supervision. On March 25, 2021, the Defendant completed the intake process. On April 29, 2021, the Defendant completed the risk and needs assessment, which resulted "in a score of high for violence." The Defendant complied with the conditions of his release until his arrest on November 15, 2021 in case number 122303 for drug- and driving-related offenses. The Defendant remained in custody after his arrest until May 19, 2022, at which time the Defendant was released on his own recognizance and returned to probation with the condition that he live with his mother and only leave the home "for the purpose of work and/or he is with his mother." The toxicology analysis of the substances possessed by the Defendant at the time of his November 15, 2021 arrest was pending when the Defendant was returned to probation supervision.

The probation violation report reflects that on July 31, 2022, the Defendant sent his probation officer a late-night text message in which he stated that he was leaving his home because his mother's fiancé was drinking alcohol and had not paid the Defendant for work performed. The probation officer attempted to call the Defendant, who did not answer, and the officer sent a message in which the officer requested information about the Defendant's whereabouts. The Defendant did not respond. On August 1, 2022, the Defendant was not present for a home visit during curfew hours. The Defendant's mother denied that her fiancé had been drinking alcohol and stated that the Defendant had been "willfully not living at her residence." The probation officer called the Defendant's cell phone while at the home, and the Defendant answered the call but did not have any "valid excuses for not being at his residence." On August 3, 2022, the Defendant reported to his probation officer, and he was sanctioned and ordered to complete additional reporting for failing to notify his probation officer of a change in residence and for not living with his mother. The Defendant failed a drug screen, which was positive for THC. The probation violation report reflects, as well, that the Defendant failed to appear in court on August 11, 2022. On August 15, 2022, the Defendant failed to report to his probation officer as instructed and ceased communications with his officer, who initiated an "absconder investigation." On August 17, 2022, the Defendant's whereabouts were unknown, and the officer determined that the Defendant had "willfully absconded from supervision."

A May 26, 2023 report from the Day Reporting Center (DRC), a division within the Tennessee Department of Correction (TDOC), was received as an exhibit. The report reflects that the Defendant was interviewed on May 3, 2023, that the Defendant satisfied the "technical" requirements for the DRC program because he had a history of substance abuse, had no convictions for sexual offenses, and had at least eighteen months remaining on his sentence. The Defendant was recommended for the program, contingent upon placement in a halfway house and a mental health evaluation. During the interview, the Defendant admitted that living with his mother resulted in his "slacking off" and to "relapse due to the toxic environment where alcohol was present and consumed." The Defendant

admitted that he "chose to cope by turning to substances for comfort" and that he stopped reporting to his probation officer. The Defendant further admitted to using methamphetamine, heroin, opiates, and alcohol on November 11, 2022.

The presentence report was received as an exhibit and reflects that the Defendant had previous convictions between 1998 and 2019 for a weapon-related offense, driving while his license was revoked, driving under the influence, failure to stop at the scene of an accident, evading arrest, robbery, fraudulent use of a credit card, possession of drug paraphernalia, four counts of misdemeanor theft, misdemeanor drug possession, attempted carjacking, two counts of aggravated robbery, two counts of assault, resisting arrest, disorderly conduct, burglary of an automobile, and aggravated burglary. The report also reflects an extensive TDOC disciplinary record between 2004 and 2020 for infractions related to creating a disturbance, interfering with an officer's duties, sexual misconduct, possession of contraband, fighting, flooding, assault, and possession of a deadly weapon. The report, likewise, reflects an extensive Knox County Sheriff's Department jail disciplinary record between 2013 and 2023 for infractions related to lying, disruptive activity, verbal abuse, hoarding or distribution of drugs, sexual harassment, reckless endangerment, resisting, interfering with a staff member's duties, refusal to lockdown, refusing a lawful order, assault on an inmate, threats, and possession of non-dangerous and dangerous contraband.

The presentence report reflects that the Defendant reported having a previous affiliation with the Bloods gang but ending his affiliation in 2010. A TDOC records search indicated a gang affiliation as late as July 13, 2020, based upon multiple indicators. The Defendant reported having an eleventh-grade education and obtaining his GED in 2008, while incarcerated. He reported having good mental and physical health, although he suffered from post-traumatic stress disorder related to a 2017 stabbing incident during a previous period of incarceration and had previous in- and out-patient mental health treatment as a minor. The Defendant reported receiving Social Security Disability benefits because of gunshot injuries he sustained to his right leg. The Defendant reported first using alcohol and marijuana at age nine, methamphetamine between ages twenty-one and thirty-six, and Xanax between the ages of twenty-six and twenty-seven. He reported previous employment as a general laborer. The report reflects that the risk and needs assessment resulted in a score of high for violence.

The prosecution requested that the trial court revoke the Defendant's probation and order him to serve the remainder of his sentence in confinement. The Defendant did not dispute the probation allegations but requested that he be returned to probation. The Defendant argued that the "nucleus" of his criminal behavior was "addiction and substance abuse" and that his failed attempts at release were rooted in a lack of structure. He argued that if he were placed in the DRC program, he would receive the structure of a halfway

house and mandatory reporting requirements.  He noted that he had served 608 days in confinement for the probation violation and 310 days in case number 122303, that he had been sober during this time, that he had thought about his life choices, and that he would like a "final opportunity at rehabilitation."

The Defendant read a prepared letter to the trial court, in which he stated,

> . . . I'm thankful for the opportunity to speak with you today.  In March when I appeared before you . . . for this matter, you expressed that it was not your intentions to revoke my probation . . . preferring to sanction me instead.  I'm grateful to you for that and fully understand that whatever sanction . . . you choose to impose will be my last and only opportunity to prove myself to you.

> You have also expressed your opinion that I will be a good candidate for the Daily Reporting Center, the DRC.  I have -- has, in fact, already accepted me.  If it pleases the Court, I would very much like to be able to go to the DRC and then to the halfway house.

> In the book of Matthew, Jesus advised that if your right hand causes you to stumble, cut it off and throw it away.  It is better for you to lose one part of your body than your whole body to go into hell.  That's what I'm planning to do, Your Honor, with the things in my life which have brought me here before you.

> I am completely disassociating myself with my old crew.  To continue those relationships was only . . . to bring me right back into this courtroom someday and I did not want that to happen.

> I've been using my time in the detention facility to take advantage of the educational and rehabilitation opportunities which were offered.  Today I have brought with me some certificates of completion of a number of courses I have taken.  One of these courses was Family Reunification.  And I'm making that a priority in my life.  I'm also focused on rebuilding and maintaining healthy relationships within my family.  To this end, my mother's fiancé has extended two job opportunities my way which I have accepted.  I will be respectful and . . . assist[] him with home renovations and performing lawncare services.

Your Honor, I know that I have work to do and a lot of people to whom I have to prove myself. I humbly ask you to allow me the chance to do just that. Thank you for your consideration.

The trial judge stated that the Defendant first appeared before the judge at the beginning of the judge's tenure and that there was "just something in you that I always thought was redeemable." The court stated that it "struggled" with its decision, though, because

every time I give you another chance, I don't even think you're doing it because you're a bad person, I don't think you're doing it because you want to, but the fact of the matter is, when I stick my neck out for you, it gets stepped on. And I've done it multiple times.

The court recalled the previous revocation hearing which was related to the Defendant's possession of methamphetamine. The court noted that the Defendant's "history" with the court dated to 2014, that the Defendant served a sentence in confinement, and that the Defendant was released from custody because the TDOC "mistakenly" concluded that he had completed service of his sentence. The court found that after the Defendant's release, he was arrested for unlawful possession of a weapon in the present case. The court stated that the Defendant had been

given the benefit of the doubt. Just, quite frankly, it was a mix-up, a mess up by TDOC. You weren't anywhere close to flattening that sentence out, but they called it done and everybody just let it go.

You were put on probation in 117642. Once again, you violated. I let you out. And then you violated again. And it just -- I've struggled with this because I've thought that there was something redeemable in you and maybe there is down deep. Maybe you've changed. I hope you have.

. . . .

But I also have to do what I have to do. And I have to ultimately be accountable for not only what happens to you but for the safety of the community . . . . And I'm looking at a person . . . who's seated in front of me who has -- I must've [miscounted], the State says you've got eight. I count six prior felony convictions. You have convictions for robbery. You have convictions that date back -- I mean, they're violent felonies. You have a conviction that dates back -- multiple convictions for aggravated robberies. Some almost twenty years ago. And I realize we all do things when we're

- 6 -

younger that we wish we hadn't done, including the person that's talking to you right now.

But all that says to me . . . is that . . . we've reached this point in time where . . . I can't do it anymore. . . . And I hope that you will do what you have to do when you get down there so that you'll try to put all this behind you and turn your life around so that you and I can shake hands one day out on the street.

The trial court determined, based upon the Defendant's "sworn admission in conjunction with the sworn allegations contained within the violation warrant," that the Defendant was in material violation of the terms and conditions of his probation. The court revoked the Defendant's probation and ordered him to serve the remainder of his ten-year sentence in confinement.

In case number 122303, pursuant to the plea agreement, the Defendant received eight years for possession with the intent to sell or to deliver methamphetamine and two years for possession with the intent to sell or to deliver Gabapentin. The court stated, "You are sentenced to consecutive terms of eight and two years." The court, though, suspended the sentence to probation. The court clarified that the ten-year sentence in case number 117642, in which the Defendant's probation was revoked, was to be served concurrently with the effective ten-year sentence to be served on probation in case number 122303.

The trial court noted that its probation revocation and sentencing determinations in both cases were "the best of both worlds" because it allowed the court to

rest comfortably knowing that I've imposed a sanction, which with your record, I have to impose for what you did. But it's also giving you a shot when you get out of TDOC to go through a program which will give you the tools to hopefully never have to look at me again unless you want to come visit me.

This appeal followed.

The Defendant contends that the trial court erred by revoking his probation in case number 117642 and ordering him to serve the remainder of his ten-year sentence in confinement. The Defendant does not challenge the trial court's sentencing determinations in case number 122303. The State responds that the court did not abuse its discretion by ordering the Defendant to serve his sentence. We agree with the State.

- 7 -

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Dagnan*, 641 S.W.3d at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (Supp. 2022), -310 (Supp. 2022). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the Defendant did not dispute violating the conditions of his probation as alleged in the probation violation warrants. While serving his ten-year sentence on probation, the Defendant was arrested for, and later pleaded guilty to, possession with the intent to sell or to deliver methamphetamine and to possession with the intent to sell or to deliver Gabapentin; tested positive for marijuana; changed residences without the consent of his probation officer; absconded from supervision; failed to appear in court in connection with his drug-related convictions; and failed to report to his probation officer. During his interview with the DRC, the Defendant admitted to violating the conditions of his release by using controlled substances and by failing to report to his probation officer. As a result, the trial court did not abuse its discretion by revoking the Defendant's probation.

The record, likewise, supports the trial court's determination to order the Defendant to serve the remainder of his probationary sentence in confinement. The court spent a

significant portion of the hearing considering the Defendant's previous opportunities to serve a sentence on probation and to remain out of confinement. The court found that the Defendant's criminal history, which included violent offenses, spanned twenty years and that the Defendant had previously violated the conditions of his probation after being afforded multiple opportunities to comply. The court concluded that the Defendant's criminal history, previous failed attempts at probation, and the safety of the community warranted the Defendant's serving the remainder of the sentence in confinement. The court did not abuse its discretion by ordering the remainder of the sentence into execution. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE